# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN HARTSTEIN,<br>    Plaintiff,<br><br>    v.<br><br>HYATT CORPORATION,<br>    Defendant. | CV 20-4874 DSF (JPRx)<br><br>Order GRANTING Hyatt's Motion for Summary Judgment (Dkt. 65); DENYING Hartstein's Motion for Partial Summary Judgment (Dkt. 66); GRANTING Request for Judicial Notice (Dkt. 67) |

Plaintiff Karen Hartstein moves for partial summary judgment on her claims for failure to pay all wages upon discharge or layoff; waiting time penalties; Hyatt's "good faith dispute" defense; and failure to pay overtime. Dkt. 66-1 (Hartstein Mot.). Defendant Hyatt Corporation opposes. Dkt. 74 (Hyatt Opp'n). Hyatt moves for summary judgment on Hartstein's claims for failure to pay all wages upon discharge or layoff; failure to pay overtime; waiting time penalties; unfair and unlawful business practices under the Unfair Competition Law (UCL); and for enforcement under the Private Attorneys General Act (PAGA). Dkt. 65-1 (Hyatt Mot.). Hartstein opposes. Dkt. 73 (Hartstein Opp'n). The Court deems these matters appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. Hyatt's motion is GRANTED. Hartstein's motion is DENIED.

## I. UNDISPUTED FACTS

This action arises following an unprecedented situation: a global pandemic that caused businesses to change workplace policies rapidly

and, in many cases, lay off, discharge, or terminate workers as it became clear the pandemic would not quickly subside.

In March 2020, in the beginning of the COVID-19 pandemic in the United States, Hyatt implemented a "furlough/temporary layoff" of many Hyatt employees in California, PSUF ¶ 3[1], and notified thousands of employees by letter that they were furloughed/temporarily laid off" due to the pandemic. Id. ¶ 4; Dkt. 66-2 Ex. A (the Letter). Hyatt instructed the furloughed[2] employees not to report to work in person and not to perform any remote work. PSUF ¶¶ 5-6. The Letter also provided furloughed employees with information about how to obtain unemployment insurance and provided notice pursuant to the California Worker Adjustment and Retraining Notification Act (Cal-WARN Act). Id. ¶ 8. Hyatt did not provide a date when furloughed employees would return to work, nor did it guarantee those employees would ever be asked to return to work. Id. ¶¶ 10, 12. Some Hyatt properties provided a range of time – such as six to twelve weeks – in which they expected employees to be able to return to work, while other properties provided no estimate at all. Id. ¶¶ 13-14. The "furlough/temporary layoff" was indefinite. Id. ¶ 16.

---

[1] Citations to DSUF refer to Plaintiff's Statement of Genuine Disputes and Additional Material Facts, dkt. 73-1, which incorporates Hyatt's proposed uncontroverted facts and Plaintiffs' responses. Citations to PSUF refer to Hyatt's Response to Separate Statement in Opposition to Plaintiff's Motion for Partial Summary Judgment, dkt. 75, which incorporates Hartstein's proposed uncontroverted facts and Hyatt's responses. To the extent certain facts are not mentioned in this Order, the Court has not relied on those facts in reaching its decision. To the extent the Court cites to a disputed fact, the Court has found that the dispute was not valid or was irrelevant unless otherwise indicated. The Court has independently considered the admissibility of the evidence and has not considered facts that are irrelevant or based on inadmissible evidence.

[2] The Court uses layoff, temporary layoff, and furlough interchangeably and ascribes no importance to the terminology for purposes of this recitation of facts.

The Letter also stated: "To ease any financial hardships, if you would like, we also can pay out accrued vacation pay on that date at your request, although we are not separating anyone's employment at this time." Letter at 1.[3]

After announcing the furlough, Hyatt immediately stopped paying wages to the furloughed employees. Id. ¶ 17. No employees were paid their earned vacation wages, floating holiday wages, and PTO (collectively, Vested Vacation Wages) within one week of being furloughed, and Hyatt did not pay any Vested Vacation Wages to the Vacation Pay Subclass on the date of the furlough. Id. ¶¶ 21-22. Hyatt limited the amount of vacation wages a furloughed employee could request to a maximum of 40 hours per week. Id. ¶ 24. When an employee requested a payment of Vested Vacation Wages, Hyatt delayed payment until the next regularly scheduled pay date. Id. ¶ 28. Employees continued to accrue vacation time while they were on furlough. DSUF ¶ 14.

In June 2020, Hyatt sent a letter to most of the furloughed employees announcing the temporary layoff would be a permanent layoff and informed employees about how to obtain unemployment insurance. PSUF ¶¶ 32-33. At that time, Hyatt paid out any remaining accrued holiday and vacation pay. DSUF ¶ 31.

Full and part time Hyatt employees become eligible to stay for free for up to twelve and six hotel room nights, respectively, at any Hyatt hotel worldwide that participates in the program, on completion of each year of employment, subject to program terms and availability. PSUF ¶¶ 36, 44. Reservations must be guaranteed by a credit card. Id. ¶ 45. Unused nights from the prior year do not roll over into the following year. Id. ¶ 42. Hyatt does not pay employees for any value associated with unused rooms and does not include the value of hotel

---

[3] It is Hyatt's general policy to pay out Vested Vacation Wages on termination. PSUF ¶ 2.

3

stays in the regular rate of pay for purposes of determining overtime compensation for non-exempt employees. Id. ¶¶ 50-51.

Under the program, one percent of each participating hotel's room inventory is reserved for "Colleague Complimentary Rooms." Id. ¶ 46. A room that has been reserved for an employee under this policy may not be released even if the hotel sells out of rooms on the date of the reservation. Id. ¶ 48. If this occurs, the hotel must pay for alternative accommodations. Id. ¶ 49.

Hyatt tracks the average daily rate (ADR) – the average room price – of each of its hotels worldwide. Id. ¶¶ 71-72. In 2020, the ADR of Hyatt's hotel rooms was $215. Id. ¶ 73. Hyatt does not attribute a specific value to the hotel room program for employees. DSUF ¶ 42.

Throughout the furlough, Hyatt allowed furloughed employees to continue to use the hotel room program. Id. ¶ 21. Hyatt also covered both the employee and employer portions of health insurance for individuals who were already receiving health insurance through Hyatt. Id. ¶ 20, 25.

## II. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "This burden is not a light one." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). But the moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

If the moving party satisfies its burden, the party opposing the motion must set forth specific facts, through affidavits or admissible

4

discovery materials, showing there exists a genuine issue for trial. Celotex Corp., 477 U.S. at 323-24; Fed. R. Civ. P. 56(c)(1). A non-moving party who bears the burden of proof at trial as to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. See Celotex Corp., 477 U.S. at 322.

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. Id. at 248. "[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992). Summary judgment is improper "where divergent ultimate inferences may reasonably be drawn from the undisputed facts." Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006)). Instead, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (punctuation omitted).

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001) (simplified). In doing so, the Court must consider the evidence submitted in support of both motions before ruling on each of them. Id.

### III. DISCUSSION

#### A.    Unopposed Request for Judicial Notice

Hartstein's unopposed request for judicial notice, Dkt. 67 (RJN), is GRANTED.

### B. Claim for Failure to Timely Pay Wages Based on Vacation Time

Hyatt and Hartstein move for summary judgment on Plaintiffs' claim for failure to pay all wages on discharge or layoff. Hyatt Mot. at 11; Hartstein Mot. at 8. In the FAC, Plaintiffs alleged they earned wages from Hyatt in the form of Vested Vacation Wages and floating holidays, but "upon termination of the employment relationship," Hyatt did not pay those wages. FAC ¶ 61.

Under California Labor Code § 201, "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201(a). Hyatt argues Section 201 does not apply to Plaintiffs' claim for unpaid wages in the form of vacation time, and Section 227.3 is applicable instead. Hyatt Opp'n at 2. The Court agrees.

Section 227.3 provides, "whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy . . . ." Cal. Lab. Code § 227.3.

Section 227.3 therefore relates to the specific issue of vacation payouts, rather than the more general "wages" referred to in Section 201. It is a "well settled rule that a general [statutory] provision is controlled by one that is special, the latter being treated as an exception to the former." People v. Super. Ct., 28 Cal. 4th 798, 808 (2002). "A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates." Id.

Section 227.3 applies when an employee has been "terminated," but the California Labor Code does not define that term. Hyatt contends Plaintiffs "were not terminated or discharged; they were furloughed and their employment relationship continued." Hyatt Mot.

6

at 11. Plaintiffs contend the difference between a termination and a furlough is merely a semantic one and that the indefinite layoff constituted a termination. Hyatt Mot. at 8. "[I]ssues of statutory construction are questions of law[.]" Nelson v. Heiss, 271 F.3d 891, 893 (9th Cir. 2001). The Court therefore considers whether Hyatt's furlough constituted a termination for purposes of Section 227.3.

The parties have not presented any binding case law defining "termination" in Section 227.3, or any California state court cases analogous to the one at issue, nor has the Court identified any. Plaintiffs cite DLSE's 1993 opinion letter, in which the agency stated that "so long as a shutdown does not exceed ten days and there is a definite date given for return to work, the employee is not considered terminated." RJN Ex. E. The opinion letter was in response to a request for "an opinion regarding plans being made by [a company] to shut its facility for one or more periods of short duration, most probably not more than one week each period." Id. The Court is not convinced that DLSE's opinion letter is relevant to the facts of this case, and while courts may look to DLSE's opinion letters for guidance, they are "not controlling upon the courts by reason of their authority." See Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 958 (9th Cir. 2013) (citing Brinker Rest. Corp. v. Super. Ct., 53 Cal. 4th 1004, 1029 n.11 (2012). DLSE's opinion that a planned shutdown not exceeding ten days was not a termination does not compel the inference that a shutdown of more than ten days is necessarily a termination.

Because there is no binding authority interpreting "termination" as used in Section 227.3, the Court turns to traditional methods of statutory interpretation. Black's Law Dictionary defines "termination" as "[t]he complete severance of an employer-employee relationship." Termination, Black's Law Dictionary (11th ed. 2019). The Court finds that "termination" in the context of Section 227.3 requires a complete severance of an employer-employee relationship. Here, there was no complete severance. Hyatt continued to pay the employer and employee health insurance premiums, Plaintiffs remained eligible to redeem complimentary hotel room stays, and Plaintiffs continued to accrue vacation time. The Court finds Hyatt's indefinite layoff or

furlough of its employees was not a "termination" within the meaning of Section 227.3.

Hartstein's motion is DENIED and Hyatt's motion is GRANTED as to Plaintiffs' claim based on vacation pay.

## C. Claims for Overtime and Failure to Timely Pay Wages Based on Complimentary Hotel Room Program

Plaintiffs claim Hyatt is liable for unpaid wages in the form of the complimentary hotel rooms they were eligible to redeem as Hyatt employees. FAC ¶ 61. Plaintiffs also claim Hyatt failed to include non-discretionary bonuses – specifically, complimentary hotel rooms – in calculating the regular rate of pay for determining the overtime rate, as well as derivative waiting time penalties based on that claim. Id. ¶¶ 28, 68, 75; Hartstein Mot. at 24-25.

Hyatt claims any value of the complimentary hotel rooms should not be considered in determining the regular rate of pay because there is no law requiring Hyatt to do so, and because there is law stating complimentary hotel rooms are not "wages." Hyatt Mot. at 23-24.

Section 200 of the California Labor Code defines "wages" as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." Cal. Lab. Code § 200.

Plaintiffs cite several cases that purportedly support the proposition that complimentary hotel rooms should be considered wages. In Murphy v. Kenneth Cole Prods., Inc., 40 Cal. 4th 1094, 1103 (2007), the California Supreme Court stated that "'wages' also include those benefits to which an employee is entitled as a part of his or her compensation, including money, room, board, clothing, vacation pay, and sick pay." Other California courts have used a similar definition. See Schumann v. Cal. Cotton Credit Corp., 105 Cal. App. 136, 140 (1930) ("Wage is compensation for services rendered, and this compensation may take the form of money paid or other value given,

8

such as board, lodging or clothes."); Dep't of Indus. Rels. v. UI Video Stores, Inc., 55 Cal. App. 4th 1084, 1091 (1997) (quoting Schumann). In Schumann, a 1930 case involving cotton pickers, the "lodging" to which the court referred was tents rented as sleeping quarters for workers who harvested cotton, Schumann, 105 Cal. App. at 139, which is distinct from the complimentary hotel rooms offered to employees by Hyatt ostensibly so that employees could redeem hotel room nights for vacations or other non-work related activities, rather than in order to carry out their job duties.

Plaintiffs also cite Davis v. Farmers Ins. Exch., 245 Cal. App. 4th 1302, 1332 (2016), in which the issue was whether the employer had unlawfully deducted from the plaintiff's compensation certain categories of premiums, the cost of supplies and equipment, and other expenses. The court of appeal merely stated in a footnote that "wages include not just salaries earned hourly, but also bonuses, profit-sharing plans, and commissions." Id. at 1332 n.11. The Court also finds Neisendorf v. Levi Strauss & Co., 143 Cal. App. 4th 509, 522 (2006) distinguishable. There the court stated that "once a bonus has been promised as part of the compensation for service, and the employee fulfills all the agreed-to conditions, the promised bonus is considered wages that must be paid." Id. However, the bonuses in that case were awarded pursuant to a bonus plan that "tied the payment . . . to a measurable benchmark." Id. Hyatt's complimentary hotel room program allows employees to redeem stays at participating Hyatt hotels after each year of employment; eligibility is not based on the employee's performance. DSUF ¶¶ 36-41.

As Hyatt points out, California courts look to the Fair Labor Standards Act (FLSA) in interpreting provisions of the California Labor Code. Hyatt Mot. at 23 n.5 (citing Prachasaisoradej v. Ralphs Grocery Co., 42 Cal. 4th 217, 242 n. 11 (2007)). In Ralphs, the California Supreme Court noted "California follows the federal standard for purposes of determining, under the Labor Code, what constitutes an employee's regular pay subject to an overtime rate." Id. The FLSA defines an employee's "regular rate of pay" as excluding "payments in the nature of gifts made at Christmas time or on other special

9

occasions, as a reward for service, the amounts of which are not measured by or dependent on hours worked, production, or efficiency[.]" 29 U.S.C. § 207(e)(1).[4]

Plaintiffs also cite the FLSA, Hartstein Mot. at 23, which defines "wage" as "the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees[.]" 29 U.S.C. § 203(m)(1). However, Plaintiffs do not cite any case law discussing this provision of the FLSA in the context of complimentary hotel rooms or other job "perks." In Harris v. Best Buy Stores, L.P., the court granted the defendant's motion for summary judgment on plaintiffs' overtime claims to the extent they were based on failure to pay overtime on the value of merchandise discounts. Harris v. Best Buy Stores, L.P., No. 15-CV-00657-HSG, 2016 WL 4073327, at *7 (N.D. Cal. Aug. 1, 2016), on reconsideration, No. 15-CV-00657-HSG, 2016 WL 6248893 (N.D. Cal. Oct. 26, 2016). The Best Buy merchandise discounts in Harris were available to employees after they had completed thirty days of continuous employment, were subject to change or variation based on Best Buy's discretion, and were available to all employees without restrictions based on the number of hours worked, production, or efficiency. Id. The court stated plaintiffs' cited cases related to "reimbursements for an employee's 'normal everyday expenses,' such as costs incurred 'in traveling to and from work, buying lunch, paying rent, and the like,' which do enter the regular rate calculation." Id.

---

[4] In support of its contention that complimentary hotel rooms are not wages within the meaning of the California Labor Code, Hyatt also cites interpretations from the Internal Revenue Service and the California Employment Development Department that hotel rooms are not considered wages for purposes of taxation. Hyatt Mot. at 25-26. The Court does not rely on those authorities because they are not interpreting the California Labor Code.

(simplified). The Court therefore declined to find merchandise discounts at issue were wages under the FLSA. Id.

The Court declines to find Hyatt's complimentary hotel rooms are "wages" within the meaning of the California Labor Code, and therefore finds they need not have been included in calculating Plaintiffs' regular rate of pay. Under the complimentary hotel room program, Plaintiffs were <u>eligible</u> to reserve room nights, but had to make their own reservations, and capacity varied from hotel to hotel depending on availability. DSUF ¶ 36. Moreover, Plaintiffs were eligible for complimentary hotel rooms after each year of service, and eligibility was not based on job performance or hours worked (except to the extent full-time employees received more complimentary room-nights). Id. ¶¶ 36-41; PSUF ¶¶ 36, 44. The program is more aptly characterized as "gifts made . . . as a reward for service," 29 U.S.C. § 207(e)(1) – which are excluded from the regular rate of pay for purposes of calculating overtime – rather than a bonus or a wage.

The Court GRANTS Hyatt's motion and DENIES Hartstein's motion as to Plaintiffs' overtime claim and claim for failure to pay wages upon discharge based on the complimentary hotel room program.

### D. Waiting Time Penalties

Hyatt moves for summary judgment on Plaintiffs' claim for waiting time penalties under Section 203 of the California Labor Code. Hyatt Mot. at 17, 28. Plaintiffs' Section 203 claim is based on their claim for failure to timely pay wages based on vacation pay and complimentary hotel rooms, and their claim for overtime pay based on the value of complimentary hotel rooms. See FAC ¶ 75 ("During the Relevant Period, Defendants willfully failed to pay accrued wages, including vacation pay, bonuses, and overtime compensation"). The Court has found in favor of Hyatt on those issues. The Court therefore need not consider whether Hyatt had a good faith dispute.

The Court GRANTS Hyatt's motion as to Plaintiffs' claim for waiting time penalties.

### E.  Derivative PAGA and UCL Claims

Hyatt moves for summary judgment on Plaintiffs' PAGA and UCL claims, which are derivative of their claims under the California Labor Code.  Price v. Starbucks Corp., 192 Cal. App. 4th 1136, 1147 (2011) (affirming summary judgment on UCL and PAGA claims based on labor code violations because when "the underlying causes of action fail, the derivative UCL and PAGA claims also fail.").

The Court GRANTS Hyatt's motion as to Plaintiffs' UCL and PAGA claims.

### IV. CONCLUSION

The Court GRANTS Hyatt's motion for summary judgment and DENIES Hartstein's motion for summary judgment.

IT IS SO ORDERED.


IT IS SO ORDERED.

DATED:  February 14, 2022

                                        Honorable Dale S. Fischer
                                        UNITED STATES DISTRICT JUDGE